## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| MERCER GLOBAL ADVISORS INC., <br><br> Plaintiff, <br><br> v. <br><br> UNIFIED INVESTMENT MANAGEMENT, LLC, RYAN MALEC, AND DAVID TRAVIS WEITZ, <br><br> Defendants. | Civil Action No. <br><br> **COMPLAINT** |

Plaintiff Mercer Global Advisors Inc. ("Plaintiff" or "Mercer"), by and through its undersigned attorneys, as and for its Complaint against Defendants Unified Investment Management, LLC ("Unified"), Ryan Malec ("Malec"), and David Travis Weitz ("Weitz") (collectively, "Defendants"), alleges and sets forth as follows:

### NATURE OF THE ACTION

1.     This case arises from Defendants Malec and Weitz's coordinated and unlawful scheme to misappropriate Mercer's trade secrets and improperly solicit Mercer's clients in connection with the formation of their company, Unified Investment Management, LLC ("Unified"), which is unfairly competing with Mercer and poaching Mercer's clients. Malec and Weitz stole Mercer's confidential information, including Mercer's trade secrets and other proprietary information. Defendants wrongfully used the confidential information to build up their new investment firm and took approximately $90 million in assets under management from

Mercer. Defendants' unlawful actions are in violation of the Georgia Trade Secrets Act, as well as numerous common law and contractual requirements, including Malec and Weitz's nonsolicit covenants and duty of loyalty to Mercer, their former employer.

2.    In November 2021, Malec and Weitz became Mercer employees, following Mercer's acquisition of substantially all the assets of Malec and Weitz's former employer, ACG Wealth, Inc. ("ACG").

3.    Malec and Weitz each signed an Employment Agreement ("EA") (Ex. D) and a Restrictive Covenant Agreement ("RCA") (Ex. E) (collectively, the "Mercer Agreements") with Mercer on October 28, 2021.

4.    The Mercer Agreements prohibited Malec and Weitz from copying or using Mercer's confidential information for any purpose except to advance Mercer's business, both during and after their employment.

5.    The Mercer Agreements expressly prohibit Malec and Weitz from soliciting Mercer clients with whom Malec and Weitz worked or about whom they obtained confidential information in connection with their employment with Mercer for a period of 24 months following their separation from Mercer.

6.    Malec and Weitz both gave Mercer their 30-day resignation notices on February 14, 2023.

7.    Malec and Weitz departed from Mercer's employment on March 16, 2023.

8.    On the final day of their employment, Mercer sent Malec and Weitz written correspondence outlining their ongoing obligations to Mercer, including but not limited to, the restrictive covenants and other commitments set forth in the Mercer Agreements.

9.    The very next day, on March 17, 2023, Malec and Weitz officially formed Unified Investment Management, LLC. *See* Ex. A, (Unified Georgia Secretary of State Business Information).

10.    On March 28, 2023, Weitz filed a Form ADV with the U.S. Securities and Exchange Commission ("SEC") on behalf of Unified.  *See* Ex. B (Unified Form ADV Part 2A). On May 12, 2023, Weitz filed a Form ADV with the SEC.  *See* Ex. C (Unified Form ADV) (collectively, "Unified Form ADV").  Form ADV allows the SEC to register investment advisers. Unified Form ADV identifies Malec and Weitz as the principal owners of Unified, and Malec as the Managing Partner and Weitz as the Managing Partner and Chief Compliance Officer.  As of March 2023, Unified had $0 Assets Under Management ("AUM").  *See* Ex. B at p. 4.

11.    By April 4, 2023, the financial accounts of several of Mercer's clients had been "delinked" from Mercer. When a client's account is delinked, Mercer personnel no longer can manage the account for the client. Each of the delinked accounts is associated with a Mercer client that was primarily serviced by either Malec or Weitz, while they were Mercer employees.

12.   Malec and Weitz used Mercer's confidential information, including Mercer's client lists, to unlawfully solicit Mercer's clients to transfer their assets under management from Mercer to Defendant Unified.

13.   Over the next few weeks Malec and Weitz wasted no time and took approximately $90,000,000.00 in AUM from Mercer.

14.   It is not possible for Mercer to reacquire every client that Malec and Weitz improperly solicited away to their new investment firm.

15.   Even before his resignation—i.e., while Malec was a Mercer employee bound by his legal duty to advance only Mercer's interests—Malec began unlawfully soliciting Mercer clients.

16.   In December 2022, Malec contacted at least one Mercer client to inform the client that he would soon be leaving Mercer to join a competing firm. This activity was plainly not intended to advance Mercer's interests. Rather, it was meant to facilitate unfair competition with Mercer. Malec had already begun his efforts to ensure Unified would quickly have millions of assets under management—those of Mercer's clients—and immediately prop up Malec's future company.

17.   Defendants unlawful conduct has caused significant and irreparable harm to Mercer and, if not enjoined, will continue to cause Mercer additional irreparable harm.

18.   Mercer seeks monetary relief against Defendants for breach of contract,

trade secret misappropriation under the Defend Trade Secrets Act, 18 U.S.C. §1836 et seq., Georgia Trade Secrets Act of 1990, O.C.G.A. §10-1-760 *et seq*., tortious interference with contract, breach of their duties of loyalty, unfair competition, and unjust enrichment, and to enjoin Unified, Malec, and Weitz from unlawfully soliciting Mercer's clients and from possessing, using, or disclosing Mercer's Confidential Information.

## PARTIES

19.    Plaintiff Mercer Global Advisors Inc. is a Delaware corporation with its principal place of business in Denver, Colorado, and offices across the country, including at 5901-B Peachtree Dunwoody Road, Suite 275, Atlanta, GA 30328.

20.    Defendant Ryan Powell Malec is a natural person who is, and at all relevant times, has been a resident of Fulton County, Georgia, residing at 11145 Willow Wood Dr., Roswell GA 30075.

21.    Defendant David Travis Weitz is a natural person who is, and at all relevant times, has been a resident of Fulton County, Georgia, residing at 4 Wieuca Trce NE, Atlanta, GA 30342.

22.    Defendant Unified Investment Management, LLC is a limited liability company organized and existing number the laws of Georgia, with its principal place of business at One Glenlake Parkway, Suite 650, Atlanta, Georgia 30328.

## JURISDICTION AND VENUE

23.    This Court has personal jurisdiction over Malec because Malec resides and transacts business within the State of Georgia, and committed the wrongful conduct alleged herein in the State of Georgia.

24.    This Court has personal jurisdiction over Weitz because Weitz resides and transacts business within the State of Georgia, and committed the wrongful conduct alleged herein in the State of Georgia.

25.    This Court has personal jurisdiction over Unified because Unified is a limited liability company organized and existing under the laws of the State of Georgia.

26.    This Court also has jurisdiction over Unified because, upon information and belief, Unified directly or indirectly, offers for sale and/or sells its services throughout the United States, including in this judicial district.

27.    This Court has subject matter jurisdiction because Plaintiff and Defendants are diverse, and the amount in controversy, including the prevailing party's entitlement to recover its costs and attorneys' fees (Ex. D at 9 (§14 of RCA)) exceeds $75,000.

28.    Venue in this Court is proper under LR 3.1(B)(1)(a), because Malec and Weitz reside in Fulton County, a county within this District.  Venue is proper in this Court because Unified is a Georgia limited liability company with its principal place

of business in Fulton County, a county within this District. Venue is also proper under LR 3.1(B)(3), because Defendants' wrongful activity giving rise to the causes of action stated herein occurred within the Atlanta Division of this District.

29. Further, Malec, Weitz, and Mercer have agreed that any dispute concerning Malec and Weitz's RCA shall be brought only in a court of competent jurisdiction in Fulton County, Georgia. Ex. D at 9 (§17 of RCA).

## FACTS

### Mercer's Business and M&A Strategy

30. Mercer provides financial planning, investment, and other financial services to individuals and businesses across the United States. Founded in 1985, Mercer is one of the nation's most recognized names in investment management, managing approximately $69 billion in assets.

31. Mercer invests significant amounts of money, time, and resources to developing and maintaining existing and prospective client relationships. Mercer's client-acquisition costs are high, and it dedicates significant resources to acquiring new clients in the hypercompetitive financial services industry, including by acquiring or merging with other wealth management firms. To safeguard this investment, Mercer requires all of its new employees, as a condition of employment, to sign certain agreements that clearly identify the proprietary and confidential nature of its client lists and information.

32.     Mercer entered the M&A market in 2016, and since that time has completed more than 99 acquisitions adding over $45 billion in assets under management ("AUM").  Mercer takes care when evaluating whether to acquire a particular firm.  Its decision whether to acquire is based on each target firm's pro forma profitability, which is highly dependent on the target firm's AUM and revenue retained after closing.  These figures, in turn, form the basis of each acquisition's carefully negotiated purchase price.  As such, any post-closing reduction of revenue caused by the loss of one or more clients results in a much greater reduction in profit realized from the acquisition, and Mercer, as a result, takes a significant loss on the benefit of the carefully negotiated bargain.

33.     Mercer's strategy is intended to further its goal of building a single operating model that has scale, national brand awareness, and the ability to provide a consistent high-quality customer experience across offices and states.

**Mercer's Protectable Interests**

34.     Mercer maintains robust and confidential information on its existing and prospective clients, including client identities, biographical information, risk tolerance, investment preferences, financial plans, tax returns, estate plans, insurance needs, and all other investment and performance information, both for investments and assets held by Mercer and for those at other financial institutions.

35.     Mercer takes substantial steps to protect this high-value Mercer

confidential information regarding its existing and prospective clients. These steps include entering into strict confidentiality agreements with its employees (described below). In addition, Mercer maintains the database that stores its confidential client information protected with a password and login requirement so that only authorized Mercer employees can access the information. Mercer limits each Wealth Advisor's access to client information to only that information relating to clients that the Wealth Advisor is responsible for servicing. The hard drives of all Mercer-issued laptops are encrypted, and each employee's Mercer-issued laptop and other electronic devices must be password protected before Mercer's confidential information can be stored on them.

36.    Further, Mercer trains and educates employees on protecting Mercer's confidential information to safeguard these valuable assets and comply with governing Securities and Exchange Commission privacy regulations. Mercer also instructs its employees about the importance of maintaining the confidentiality of Mercer proprietary information, including confidential client information, through its employee handbook and other documents outlining Mercer's policies and procedures.

37.    Mercer invests significant amounts of money in obtaining new clients and in protecting Mercer's confidential information pertaining to its existing and prospective clients.

**Malec and Weitz's Employment and Post-Employment History with Mercer**

38.    In 2021, Mercer acquired the assets of Malec and Weitz's prior employer, ACG, including ACG's client lists, client relationships, and all other rights and properties.

39.    In connection with its acquisition of ACG, Mercer hired Malec as a Senior Wealth Advisor, a role that permitted him to continue servicing the former ACG clients whose goodwill Mercer acquired.

40.    In connection with its acquisition of ACG, Mercer hired Weitz as a Senior Portfolio Manager and allowed him to also serve as an advisor for several of Mercer's clients.

41.    Malec and Weitz gave their 30-day resignation notices to Mercer on February 14, 2023.

42.    Following the 30-day notice and transition period required by their RCAs, Malec and Weitz departed from Mercer's employment on March 16, 2023.

43.    A day later, Malec and Weitz formed Defendant Unified Investment Management LLC on March 17, 2023.  *See* Ex. A.

44.    Unified is a competitor of Mercer, offering the same portfolio management services to individuals, high-net-worth individuals, and other investment advisers that Mercer similarly offers to its similarly situated clients.  *See* Ex. B at pp. 2, 5.

45.    Malec and Weitz are both Managing Partners and control Unified, and

each hold a 50% ownership interest in Defendant Unified.  *See* Ex. C at p. 18.

46.    As of March, 2023, Unified had $0 in AUM.  *See* Ex. B at p. 4.

**Malec and Weitz's Contractual Obligations to Mercer**

47.    Malec and Weitz agreed to undertake various contractual obligations to Mercer by executing their RCAs and EAs, which are collectively referred to as the Mercer Agreements.

48.    As a condition of his employment, Malec executed his RCA and EA on or about October 29, 2021.

49.    As a condition of his employment, Weitz executed his RCA and EA on or about October 29, 2021.

50.    The Mercer Agreements took effect on November 1, 2021.

51.    The Mercer Agreements prohibited Malec and Weitz from copying or using Mercer's confidential information for any purpose except to advance Mercer's business, both during and after their employment.

52.    The Mercer Agreements include the following prohibitions on Malec and Weitz's use of Mercer's confidential information:

> Employee agrees that Employee will not, at any time during or after Employee's employment with Company: (i) directly or indirectly publish, disclose, or make accessible any Confidential Information, whether in tangible or intangible form (e.g., Confidential Information stored in Employee's memory), or any part thereof, to any person, firm, corporation, or association or other entity not having a need to know and authority to know and use the Confidential Information in connection with the business of the Company Group for any reason whatsoever; (ii)

access or use any Confidential Information, and not to copy any documents, records, files, media, or other resources containing any Confidential Information, or remove any such documents, records, files, media, or other resources from the premises or control of the Company Group, except as required in the performance of the Employee's authorized employment duties to the Company Group; or (iii) directly or indirectly use or generate benefit from such Confidential Information, without prior written permission from the Chief Executive Officer of Company. Notwithstanding the foregoing restrictions, Employee may publish, disclose, use, or make accessible Confidential Information as required in the execution of Employee's job duties and responsibilities with the Company and for the benefit of the Company Group.

53.    The Mercer Agreements define "Confidential Information" to include the

following information:

client lists, client records, technical data, financial and personnel data, information regarding sales, costs, pricing, profits, operation techniques and procedures, service developments or improvements, processes, business and strategic plans, financial forecasts, sales and earnings information and trends, overhead and other costs, accounting information, banking and financing information, product and merchandising information, information concerning offered or proposed products or services, products or services specifications, data, drawings, designs, performance characteristics, features, capabilities and plans and development and delivery schedules, the identity of clients and their family members, client and supplier contact information, client preference data, client personal and financial information, purchasing habits, sales history, pricing and rebate levels, contracts, referral source contact information, referral source patterns and histories, referral source records, referral source agreements, computer hardware and software, research and development objectives, information housed in Salesforce, Orion, inStream, box.com, Microsoft Office365 and Microsoft Exchange, information housed in custodial institutional websites (Veo for TDAmeritrade, Advisors Services for Schwab), information belonging to or provided in confidence by any individual, client, supplier, trading partner or other person or entity to which the individual had access by reason of an individual's employment with any member of the Company Group, or any other information that derives

economic value from being confidential to or trade secrets of the Company Group.

54.    The Mercer Agreements expressly prohibit Malec and Weitz from soliciting the Mercer clients with whom Malec and Weitz worked or about whom they obtained Mercer confidential information in connection with their employment with Mercer.

55.    The Mercer Agreements include the following prohibitions on Malec and Weitz's solicitation of Mercer's clients, while employed by Mercer:

> Employee hereby agrees that during the period of Employee's employment with any member of the Company Group, Employee shall not: (i) on Employee's own behalf or on behalf of any other person or entity, directly or indirectly, (A) solicit or counsel any Restricted Client to terminate any business relationship with Company Group or commence a similar business relationship with another individual or entity; (B) in any other manner attempt to directly or indirectly to influence, induce, or encourage any Restricted Client to discontinue, reduce, or materially change its relationship or business with the Company Group …

56.    The Mercer Agreements include the following post-employment prohibitions on Malec and Weitz's solicitation of Mercer's clients:

> Employee hereby agrees that during the Post-Employment Restricted Period (as defined below), Employee shall not: (i) on Employee's own behalf or on behalf of any other person or entity, directly or indirectly, (A) solicit or counsel, or assist in soliciting or counseling, any Restricted Client to terminate any business relationship with Company Group or commence a similar business relationship with another individual or entity; (B) in any other manner attempt to directly or indirectly to influence, induce, or encourage any Restricted Client to discontinue, reduce, or materially change its relationship or business with the Company Group; or (C) accept any business from or perform any

Company Services for a Restricted Client that are the same or substantially similar to the business accepted or Company Services performed by Employee during his/her employment with the Company Group; provided that Employee's obligations under this Section (8)(c)(i) are limited to those Restricted Clients with whom Employee worked, directly or indirectly (through the supervision or management of employees), or about whom Employee received or had access to Confidential Information, during the twenty-four (24) month period preceding the termination of Employee's employment.

57.    The Mercer Agreements include the following definition of the "Post-Employment Restricted Period" applicable to the post-employment prohibition on Malec and Weitz's solicitation of Mercer's clients:

Post-Employment Restricted Period" shall mean the twenty-four (24) month period immediately following the termination of Employee's employment with all members of the Company Group, regardless of the reason for such termination and regardless of whether such termination was by Employee or the Company Group.

58.    The RCAs signed by Malec and Weitz state that:

All of the provisions of this Agreement, including but not limited to the restrictions and remedies survive the termination of Employee's employment, irrespective of the grounds or reasons for such termination, including termination by Company for any reason, or no reason at all.

59.    The EAs signed by Malec and Weitz state that:

Employee agrees that the covenants in the Restrictive Covenant Agreement shall survive termination of Employee's employment with Employer and this [Employment] Agreement.

60.    Under the Mercer Agreements, Malec and Weitz each undertook a duty of loyalty to Mercer.

61.    Malec and Weitz each agreed to "loyally, conscientiously, and

professionally do and perform all duties and responsibilities assigned by Employer and the Employee's supervisors."

62.     The Mercer Agreements state that Mercer would provide Malec and Weitz "with access to its existing and prospective clients and referral sources, in exchange for Employee's promises to not use or disclose such Confidential Information, trade secrets, and client and referral sources."

63.     Malec and Weitz further agreed to "return all Company Group … data, information, records, and any other documents or property" upon termination or resignation.

64.     Malec and Weitz additionally agreed to "only access the Company Group's Confidential Information on Company issued devices" and to "not access the Company Group's Confidential Information from any personal or non-company issued device or personal accounts."

65.     Malec and Weitz agreed to "not copy any documents, records, files, media, or other resources containing any Confidential Information, or remove any such documents … from the premises or control of the Company Group."

66.     Malec and Weitz also agreed that "[i]n the event a dispute arises between the Parties relating in any way to this Agreement and legal action is instituted, by either Party, the prevailing Party shall be entitled to recover its reasonable costs and attorneys' fees (including paralegal fees) from the non-prevailing Party. As used

herein, costs and attorneys' fees (including paralegal fees) include any costs and attorneys' fees in any appellate proceeding."

**Malec and Weitz are Misappropriating Mercer's Trade Secrets and Wrongfully Soliciting Mercer's Clients**

67.    Malec and Weitz have intentionally misappropriated and used Mercer's trade secrets, including Mercer's confidential client Information.

68.    On information and belief, Malec and Weitz have used Mercer's trade secrets and confidential client information to solicit clients to their new investment firm, Defendant Unified, and away from Mercer.

69.    Malec and Weitz tendered their resignations on February 14, 2023.

70.    On or about April 4, 2023, Mercer learned that the financial accounts of several of Mercer's clients had been "delinked" from Mercer by an unknown third party. When an account is delinked, Mercer personnel can no longer manage the account for the associated client.

71.    Mercer's investigation also determined that virtually every one of the delinked accounts is associated with a Mercer client that was primarily serviced by former employee Malec and/or Weitz.

72.    Malec and Weitz caused the accounts of several Mercer clients to be delinked from Mercer.

73.    Malec and Weitz first solicited the Mercer clients to delink, using the

confidential client information they obtained while employed at Mercer.

74.    Malec and Weitz have used and intend to continue using Mercer's confidential client information to solicit Mercer's clients to their new investment firm, Defendant Unified, and away from Mercer.

75.    It is not possible for Mercer to reacquire every client that Malec and Weitz solicit away to their new investment firm, Unified.

**Unified, Malec, and Weitz Tortiously Interfered with Mercer's Contracts with the Restricted Clients**

76.    Mercer and Unified are competitors in the financial advisory industry.

77.    Malec and Weitz terminated their employment with Mercer on March 16, 2023. The next day, Malec and Weitz officially formed Defendant Unified Investment Management LLC on March 17, 2023.

78.    Mercer's RCA and EA with Malec and Weitz define Mercer's confidential information to include client lists, client records, financial and personnel data, the identity of clients and their family members, client and supplier contact information, client preference data, client personal and financial information, purchasing habits, sales history, pricing and rebate levels, contracts, referral source contact information, referral source patterns and histories, among other things.

79.    Mercer entered into agreements with the Restrict Clients to provide financial services in exchange for advisor fees.

80.    Defendants are not parties to the contracts between Mercer and the

Restricted Clients.

81.    Defendants used Mercer's confidential and proprietary client lists to seek and obtain the Restricted Clients' business.

82.    Defendants purposefully and methodically solicited the Restricted Clients to move their business from Mercer to Unified, knowing that that moving the Restricted Clients' business to Unified would deprive Mercer of that business.

83.    Defendants caused the Restricted Clients to discontinue their business relationships with Mercer.

84.    Mercer suffered financial losses because of Defendants' interference with Mercer's contracts with the Restricted Clients, including lost clients and revenue that would have been generated by servicing the Restricted Clients who moved their business to Unified.

## FIRST CAUSE OF ACTION
### Breach of Contract - Solicitation
### (against Malec and Weitz)

85.    A valid EA exists between Mercer and Malec.

86.    A valid EA exists between Mercer and Weitz.

87.    A valid RCA exists between Mercer and Malec.

88.    A valid RCA exists between Mercer and Weitz.

89.    Malec and Weitz have breached each of the contractual provisions identified and described above.

90.    Malec and Weitz breached their contractual duty not to solicit Mercer's customers.

91.    Malec and Weitz's breaches have caused and will continue to cause both pecuniary and non-pecuniary damage to Mercer.

92.    Mercer is entitled to compensatory damages in partial redress of the harm caused by Malec and Weitz's breaches.

93.    Mercer is further entitled to recover its costs and attorneys' (including paralegal fees) fees. *See* Ex. E at 9 (§14 of RCA).

94.    In addition to compensable harms, Malec and Weitz's breaches also cause and have caused irreparable harm to Mercer.

95.    As Malec and Weitz have specifically acknowledged, remedies at law for any breach of covenants in the RCA are inadequate. *Id.* at 8 (§12 of RCA) ("[M]oney damages would not be a sufficient remedy for any breach of this Agreement...").

96.    The harm to Mercer from failure to enjoin Malec and Weitz's continued breaches outweighs any harm to Malec and Weitz from enjoining them.

97.    The public interest is served by enforcing the terms of the EA and RCA.

98.    Mercer is entitled to injunctive relief to prevent further injury from Malec and Weitz's breaches of the RCA. *Id.* ("[Mercer] shall be entitled to enforce its rights under this Agreement by injunctive relief in addition to all remedies available at law or in equity.").

## SECOND CAUSE OF ACTION
### Breach of Contract - Confidentiality
### (against Malec and Weitz)

99.    Malec and Weitz have breached each of the contractual provisions identified and described above.

100.    Malec and Weitz breached their contractual duty not to copy or use Mercer's confidential client information other than for Mercer's benefit.

101.    Malec and Weitz breached their contractual duty to return Mercer's confidential client information to Mercer upon the termination of their employment.

102.    Malec and Weitz's breaches have caused and will continue to cause both pecuniary and non-pecuniary damage to Mercer.

103.    Mercer is entitled to compensatory damages in partial redress of the harm caused by Malec and Weitz's breaches.

104.    Mercer is further entitled to recover its costs and attorneys' (including paralegal fees) fees.    *See* Ex. E at 9 (§14 of RCA).

105.    In addition to compensable harms, Malec and Weitz's breaches also cause and have caused irreparable harm to Mercer. Among other things, Mercer has expended significant costs and resources on efforts to retain clients. It is also suffering loss of goodwill and reputational harm. It has lost specific, identifiable clients with significant AUM and is threatened with loss of additional clients and additional AUM. In addition, Mercer has incurred attorneys' fees in connection with investigating and

attempting to mitigate the ongoing harm that Malec and Weitz have caused.

106.    As Malec and Weitz have specifically acknowledged, remedies at law for any breach of covenants in the RCA are inadequate. *Id.* at 8 (§ 12 of RCA) ("[M]oney damages would not be a sufficient remedy for any breach of this Agreement ...").

107.    An injunction is necessary to prevent Malec and Weitz from using the information wrongfully obtained, or permitting anyone else to use that information, for the benefit of anyone but Mercer.

108.    The harm to Mercer from failure to enjoin Malec and Weitz's continued breaches outweighs any harm to Malec and Weitz from enjoining them.

109.    The public interest is served by enforcing the terms of the EA and RCA.

110.    Mercer is entitled to injunctive relief to prevent further injury from Malec and Weitz's breaches of the RCA. *Id.* ("[Mercer] shall be entitled to enforce its rights under this Agreement by injunctive relief in addition to all remedies available at law or in equity.").

### THIRD CAUSE OF ACTION
**Breach of Contract – Duty of Loyalty**
**(against Malec and Weitz)**

111.    Malec and Weitz have breached each of the contractual provisions identified and described above.

112.    Malec and Weitz breached their contractual duty of loyalty by acting for their own benefit and to the detriment of Mercer.

113.   Malec and Weitz's breaches have caused and will continue to cause both pecuniary and non-pecuniary damage to Mercer.

114.   Mercer is entitled to compensatory damages in partial redress of the harm caused by Malec and Weitz's breaches.

115.   Mercer is further entitled to recover its costs and attorneys' (including paralegal fees) fees. *See* Ex. E at 9 (§14 of RCA).

### FOURTH CAUSE OF ACTION
**Misappropriation of Trade Secrets Under the Defend Trade Secrets**
**18 U.S.C. §1836 ("DTSA")**
**(against all Defendants)**

116.   Mercer's confidential information comprises one or more trade secrets under the DTSA, 18 U.S.C. §1836 *et seq*.

117.   Mercer owns trade secrets including financial, business, and economic information about its confidential list of actual or potential clients which is not commonly known by or available to the public and which information derives economic value, actual or potential, from not being generally known and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

118.   Mercer's trade secrets include its confidential client lists, which derive actual economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value  from its disclosure or use.  In particular, the exclusive use of Mercer's confidential information by Mercer provides value to Mercer by facilitating its financial advising

business, while excluding its competitors' access and use.

119.   Mercer takes reasonable efforts to maintain the secrecy of its confidential client information. These efforts include, but are not limited to, password-protecting the computer systems on which the Mercer's confidential information is maintained. *See* Ex. E at 4 (§5 of RCA) ("Employee must maintain a password to all Company Issued Devices in Employee's possession and … may not disclose Employee's password(s) for Company Issued Devices to any individual or entity outside of Company."). The efforts further include, but are not limited to, requiring employees with access to Mercer's confidential information to agree to maintain the secrecy of such information. *See*, *e.g.*, *id*. at 3 (§3 of RCA) ("Non- Disclosure/Non-Use of Confidential Information").

120.   On information and belief, Malec and Weitz have contacted several of Mercer's clients after the date of termination of their employment relationships with Mercer. Such conduct establishes a presumption that contact with each client and/or prospect was made by means of unlawfully downloading, copying, writing, listing, or compiling Mercer's confidential client information and/or other trade secrets, and improperly used Mercer's confidential client information and/or other trade secrets to gain an unfair advantage in the market. This information could not be acquired or duplicated by legitimate or proper means.

121.   Malec and Weitz also improperly acquired Mercer's confidential

information by accessing, copying, and retaining confidential information in violation of their duties to maintain the secrecy of the information.

122.   Malec and Weitz also improperly acquired Mercer's trade secrets by, among other things, improperly storing Mercer's confidential information on their personal electronic devices in violation of their contractual obligations.

123.   Malec and Weitz also improperly acquired Mercer's trade secrets by, among other things, improperly retaining Mercer's confidential information on their personal electronic devices after terminating their employment, in violation of their contractual obligations.

124.   Malec and Weitz improperly acquired Mercer's trade secrets, including Mercer's client list, by storing it on their personal electronic devices and by retaining Mercer's confidential client information after terminating their employment with Mercer.

125.   Malec and Weitz purposefully and improperly disclosed Mercer's trade secrets to Unified.

126.   Unified acquired Mercer's trade secrets from Malec and Weitz under circumstances in which Unified knew and/or had reason to know that Mercer's trade secrets were improperly acquired.

127.   Unified used Mercer's trade secrets to solicit and acquire Mercer's clients.

128.   Defendants' misappropriation of Mercer's trade secrets and confidential information has damaged and will continue to damage Mercer.

129.   Defendants' misappropriation of Mercer's trade secrets and confidential information has unjustly enriched and will continue to unjustly enrich Defendants.

130.   Malec and Weitz's misappropriation of Mercer's confidential information is willful and malicious. Malec and Weitz were aware that Mercer maintains its confidential client information as a trade secret and deliberately violated their contractual obligations to maintain its secrecy and to use it only for Mercer's benefit. On information and belief, Malec and Weitz will continue to use Mercer's confidential information to continue to deliberately harm Mercer by soliciting away more of Mercer's customers, unless enjoined.

131.   Unified's misappropriation of Mercer's confidential information is willful and malicious. Unified was aware that Mercer maintains its confidential client information as a trade secret and yet deliberately used Mercers' confidential client information for its own benefit. On information and belief, unless it is enjoined, Unified will continue to use Mercer's confidential client information to harm Mercer by soliciting away more of Mercer's clients.

132.   Mercer is entitled to permanent injunctive relief, damages in an amount to be determined at trial, and such other relief as the Court deems just and proper.

## FIFTH CAUSE OF ACTION
### Misappropriation of Trade Secrets Under the Georgia Trade Secrets Act, O.C.G.A. §10-1-761 *et seq*. ("GTSA") (against all Defendants)

133.   Mercer's confidential information comprises one or more trade secrets under Ga. Code Ann., §10-1-761(4).  For example, Mercer's confidential information includes "a list of actual or potential customers … which is not commonly known by or available to the public and which information … [d]erives economic value, actual or potential, from not being generally known ... and [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Ga. Code Ann., §10-1-761(4).

134.   Mercer's confidential client information, including its client lists, derives actual economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value  from its disclosure or use.   In particular, the exclusive use of Mercer's confidential information by Mercer provides value to Mercer by facilitating its financial advising business, while excluding its competitors' access and use.

135.  Mercer makes reasonable efforts to maintain the secrecy of its confidential client information. These efforts include, but are not limited to, password-protecting the computer systems on which the Mercer's confidential information is maintained. *See* Ex. E at 4 (§5 of RCA) ("Employee must maintain a password to all Company Issued Devices in Employee's possession and … may not disclose

Employee's password(s) for Company Issued Devices to any individual or entity outside of Company."). The efforts further include, but are not limited to, requiring employees with access to Mercer's confidential information to agree to maintain the secrecy of such information. *See*, *e.g.*, *id*. at 3 (§3 of RCA) ("Non- Disclosure/Non-Use of Confidential Information").

136.   On information and belief, Malec and Weitz have contacted several of Mercer's clients after the date of termination of their employment relationships with Mercer. Such conduct establishes a presumption that contact with each client and/or prospect was made by means of unlawfully downloading, copying, writing, listing, or compiling Mercer's confidential client information and/or other trade secrets, and improperly used Mercer's confidential client information and/or other trade secrets to gain an unfair advantage in the market. This information could not be acquired or duplicated by legitimate or proper means.

137.   Malec and Weitz also improperly acquired Mercer's confidential information by accessing, copying, and retaining confidential information in violation of their duties to maintain the secrecy of the information.

138.   Malec and Weitz also improperly acquired Mercer's trade secrets by, among other things, improperly storing Mercer's confidential information on their personal electronic devices in violation of their contractual obligations.

139.   Malec and Weitz also improperly acquired Mercer's trade secrets by,

among other things, improperly retaining Mercer's confidential information on their personal electronic devices after terminating their employment, in violation of their contractual obligations.

140.   Malec and Weitz improperly acquired Mercer's trade secrets, including Mercer's client list, by storing it on their personal electronic devices and by retaining Mercer's confidential client information after terminating their employment with Mercer.

141.   Malec and Weitz purposefully and improperly disclosed Mercer's trade secrets to Unified.

142.   Unified acquired Mercer's trade secrets from Malec and Weitz under circumstances in which Unified knew and/or had reason to know that Mercer's trade secrets were improperly acquired.

143.   Unified used Mercer's trade secrets to solicit and acquire Mercer's clients.

144.   Defendants' misappropriation of Mercer's trade secrets and confidential information has damaged and will continue to damage Mercer.

145.   Defendants' misappropriation of Mercer's trade secrets and confidential information has unjustly enriched and will continue to unjustly enrich Defendants.

146.   Malec and Weitz's misappropriation of Mercer's confidential information is willful and malicious. Malec and Weitz were aware that Mercer maintains its

confidential client information as a trade secret and deliberately violated their contractual obligations to maintain its secrecy and to use it only for Mercer's benefit. On information and belief, Malec and Weitz will continue to use Mercer's confidential information to continue to deliberately harm Mercer by soliciting away more of Mercer's customers, unless enjoined.

147.   Unified's misappropriation of Mercer's confidential information is willful and malicious. Unified was aware that Mercer maintains its confidential client information as a trade secret and yet deliberately used Mercers' confidential client information for its own benefit. On information and belief, unless it is enjoined, Unified will continue to use Mercer's confidential client information to harm Mercer by soliciting away more of Mercer's clients.

148.   Mercer is entitled to permanent injunctive relief, damages in an amount to be determined at trial, and such other relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION
### (Tortious Interference with Contract)
### (against all Defendants)

149.   Defendants are not parties to the contracts between Mercer and the Restricted Clients.

150.   Defendants were aware of the agreements between Mercer and the Restricted Clients.

151.   Unified and Mercer are competitors in the financial advisory market.

152.   Malec and Weitz terminated their employment with Mercer on March 16, 2023.  A day later, Malec and Weitz officially formed Defendant Unified Investment Management LLC on March 17, 2023.

153.   Mercer's RCA and EA with Malec and Weitz define Mercer' confidential information to include client lists, client records, financial and personnel data, the identity of clients and their family members, client and supplier contact information, client preference data, client personal and financial information, purchasing habits, sales history, pricing and rebate levels, contracts, referral source contact information, and referral source patterns and histories, among other things.

154.   Defendants used Mercer's confidential and proprietary client lists to seek and obtain the Restricted Clients' business.

155.   Defendants purposefully and methodically solicited the Restricted Clients to move their business from Mercer to Unified, knowing that moving the Restricted Clients' business to Unified would deprive Mercer of that business.

156.   Defendants caused the Restricted Clients to discontinue their business relationships with Mercer.

157.   Mercer suffered financial losses because of Defendants' interference with Mercer's contracts with the Restricted Clients, including lost clients and revenue that would have been generated by servicing the Restricted Clients who moved their business to Unified.

## SEVENTH CAUSE OF ACTION
### (Breach of the Common Law Duty of Loyalty)
### (against Malec and Weitz)

158.  As a Senior Wealth Advisor, Malec owed certain fiduciary duties to Mercer including, but not limited to, the duty of loyalty.

159.  As a Senior Portfolio Manager, Weitz owed certain fiduciary duties to Mercer including, but not limited to, the duty of loyalty.

160.  Malec and Weitz intentionally and willfully violated their duties of loyalty to Mercer by failing to act in the interests of Mercer, including by using Mercer's systems to retrieve information not intended for the benefit of Mercer but to advance their own and others' interests in establishing their own investment firm, Unified Investment Management, LLC.

161.  During their employment with Mercer, Malec and Weitz took actions which were intended to persuade clients of Mercer to terminate their association with Mercer, including, but not limited to, wrongfully accessing Mercer confidential information intending to use it to solicit Mercer's clients.

162.  For example, in December 2022, Malec contacted at least one Mercer client to  inform her that he would soon be leaving Mercer to join a competing firm.

163.  On information and belief, Malec informed the Mercer client of his imminent departure for the purposes of later soliciting that client to transfer her accounts from Mercer to Malec's new firm, Defendant Unified.

164.   Weitz, while still employed by Mercer, informed a Mercer client that he was starting a competing firm.

165.   On information and belief, both Malec and Weitz took additional steps, while still employed by Mercer, to enable them to solicit Mercer clients after their departure, including improperly retaining Mercer's confidential information and informing Mercer's clients of their planned departures even before informing Mercer of their planned departures.

166.   In engaging in the misconduct described above, Malec and Weitz breached their duties of loyalty to Mercer.

167.   Malec and Weitz's breaches of their duties of loyalty has caused financial injury to Mercer.

168.   Mercer is entitled to damages in an amount to be determined at trial, and such other relief as the Court deems just and proper.

### EIGHTH CAUSE OF ACTION
### (Common Law Unfair Competition against all Defendants)

169.   Defendants conduct is contrary to honest practice in the financial industry and commercial matters.

170.   Defendants have acted deceptively by secreting planning a competing business while Mercer continued to employ Malec and Weitz, who had access to Mercer's highly confidential and/or trade secret information, which Defendants used to unlawfully poach Mercer's clients to set up their own competing firm.

171.    Indeed, on information and belief, Defendant Malec took unfair advantage of his position while still employed at Mercer and informed at least one Mercer client of his imminent departure for the purposes of later soliciting that client to transfer her accounts from Mercer to Malec's new firm, Defendant Unified.

172.    As a result of Defendants' unfair competition, Mercer has suffered and will continue to suffer imminent harm. Among other things, Mercer has expended significant costs and resources to acquire and retain its clients. It is also suffering a loss of goodwill and reputational harm. It has lost specific, identifiable clients with significant asserts and is threatened with additional losses. In addition, it has incurred attorneys' fees in connection with investigating and attempting to mitigate the ongoing harm that Defendants have caused.

173.    The harm to Mercer is imminent, irreparable, and difficult to quantify.

174.    Mercer is entitled to permanent injunctive relief, damages in an amount to be determined at trial, and such other relief as the Court deems just and proper.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment against all Defendants)

175.    Through the misconduct described above, Defendants have received and/or will receive a benefit from Mercer, including, but not limited to, business opportunities and fees from Mercer's former clients.

176.    Defendants have voluntarily retained the benefit conferred.

177.    The circumstances described above would make it inequitable for

Defendants to retain the benefit without paying for the value thereof.

178.   Mercer is entitled to damages in an amount to be determined at trial, and such other relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for relief as follows:

1. Permanent injunctive relief against Malec, Weitz, and Unified preventing them from using any of Mercer's trade secrets or Mercer confidential information;

2. Permanent injunctive relief against Malec, Weitz, and Unified preventing them from soliciting any of Mercer's clients;

3. A finding that Defendants, jointly and severally, purposefully and maliciously misappropriated Mercer's trade secrets;

4. A finding that Defendants, jointly and severally, are liable to Mercer for its resulting damages established in this action;

5. An appropriate award of compensatory damages for the harm Mercer incurred as a result of Defendants' wrongful conduct;

6. Damages, jointly and severally, appropriate to compensate Mercer for Defendants' wrongful conduct;

7. An order requiring Defendants to submit to, and to pay for, an equitable accounting to identify all sums improperly obtained from Mercer and to

disgorge all monetary and other benefits improperly obtained to the detriment of Mercer;

8. A finding that Defendants, jointly and severally, stand liable to Mercer for the imposition of punitive or exemplary damages, because Defendants' wrongful actions complained of herein were willful and malicious

9.  Attorneys' and paralegals' fees and costs; and

10. Such other and further relief as the Court deems just and proper.


Dated: May 7, 2025                              Respectfully submitted,


                                                By: /s/ Shane Nichols
                                                A. Shane Nichols
                                                (Georgia Bar No. 542654)

                                                **MCDERMOTT WILL & EMERY LLP**
                                                1180 Peachtree Street NE, Suite 3350
                                                Atlanta, Georgia 30309
                                                Tel:  404-260-8553
                                                Fax:  404-393-5260
                                                ShaneNichols@mwe.com