# EXHIBIT E

## CONFIDENTIALITY AND RESTRICTIVE COVENANT AGREEMENT

This Confidentiality and Restrictive Covenant Agreement (hereinafter referred to as the "Agreement") made and entered into this 29 day of October , 2021, by and between Mercer Global Advisors Inc. (referred to as "Company") and the undersigned employee (hereinafter referred to as "Employee"). Individually, Company and Employee may be referred to as a "Party," and collectively as the "Parties."

## WITNESSETH

**WHEREAS**, the Company is engaged in the business of total wealth management and is dedicated to providing clients with financial clarity, investment insight, and long-term collaborative partnerships. Company's comprehensive suite of services includes, without limitation, financial planning, investment management, asset protection and risk management, estate, tax, and legacy planning, retirement plan design and administration, family wealth office services, and any other services provided by the Company following the execution of this Agreement (the "Company Services"). These Company Services are delivered holistically, rooted in the latest academic and industry findings, customized to the specific needs of each client, and delivered with a fiduciary standard of care;

**WHEREAS**, Company and Employee acknowledge that Company has a substantial and legitimate business interest in, among other things, its confidential business information, trade secrets, client goodwill, referral sources, client and vendor lists, pricing, methods of business operation, and substantial relationships with specific prospective and existing clients and referral sources;

**WHEREAS**, Company and Employee recognize and acknowledge that in the course of Employee's employment with the Company, Employee will acquire certain trade secrets, Confidential Information (defined below), sensitive business information, marketing data, business expertise, and information concerning client, vendor, and referral source relationships of Company. Employee acknowledges that the foregoing information is a legitimate, valuable, and basic business property right of Company, and that the same is information and knowledge not generally known in the public domain;

**WHEREAS**, Company and Employee further recognize and acknowledge that as consideration for this Agreement, Employee will have access to and an opportunity to maintain and develop relationships and goodwill on the Company's behalf with the Company's existing and prospective clients and referral sources, and that Employee would not otherwise have the opportunity to develop such relationships but for his/her employment with Company;

**WHEREAS**, Company desires to be able to impart Confidential Information and trade secrets to Employee, and provide Employee with access to its existing and prospective clients and referral sources, in exchange for Employee's promises to not use or disclose such Confidential Information, trade secrets, and client and referral sources as set forth herein;

1

92144612v.2

NOW THEREFORE, in consideration of the foregoing, Employee's employment or continued employment, Company's provision of and Employee's access to Company's confidential and/or trade secret information, Employee's access to the Company's relationships and goodwill with existing and prospective clients and referral sources, and the mutual covenants and restrictions contained herein, and other valuable consideration, the receipt of which is hereby acknowledged, each of the Parties, their respective personal representatives, heirs, successors and assigns, intending to be legally bound hereby agree as follows:

1. **Company Will Provide Confidential Information.**  In exchange for Employee's promises made in this Agreement, the Company promises that it will provide Employee access to and the opportunity to create and/or develop Confidential Information concerning the Company Group's business and clients.  "Confidential Information" includes client lists, client records, technical data, financial and personnel data, information regarding sales, costs, pricing, profits, operation techniques and procedures, service developments or improvements, processes, business and strategic plans, financial forecasts, sales and earnings information and trends, overhead and other costs, accounting information, banking and financing information, product and merchandising information, information concerning offered or proposed products or services, products or services specifications, data, drawings, designs, performance characteristics, features, capabilities and plans and development and delivery schedules, the identity of clients and their family members, client and supplier contact information, client preference data, client personal and financial information, purchasing habits, sales history, pricing and rebate levels, contracts, referral source contact information, referral source patterns and histories, referral source records, referral source agreements, computer hardware and software, research and development objectives, information housed in Salesforce, Orion, inStream, box.com, Microsoft Office365 and Microsoft Exchange, information housed in custodial institutional websites (Veo for TDAmeritrade, Advisors Services for Schwab), information belonging to or provided in confidence by any individual, client, supplier, trading partner or other person or entity to which the individual had access by reason of an individual's employment with any member of the Company Group, or any other information that derives economic value from being confidential to or trade secrets of the Company Group. Employee understands that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise identified or treated as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used. For purposes of this Agreement, the term "Company Group" shall mean Company, Mercer Advisors Inc., Mercer Advisors Intermediate Holdings, Inc., and their respective direct and indirect subsidiaries.

2. **Value of Confidential Information**.  Employee acknowledges that the industry in which the Company Group conducts business is highly competitive and that the Confidential Information constitutes valuable, special, and unique assets of the Company Group, which the Company Group uses in its business to obtain a competitive advantage over the Company Group's competitors that do not know or use this information.  Employee further acknowledges that prior to Employee's employment with the Company, Employee did not have access to the Confidential Information, and would not otherwise have had such Confidential Information available to him/her through any other source.

2

92144612v.2

3.  **<u>Non-Disclosure/Non-Use of Confidential Information</u>**.

        a.   Employee agrees that Employee will not, at any time during or after Employee's employment with Company: (i) directly or indirectly publish, disclose, or make accessible any Confidential Information, whether in tangible or intangible form (e.g., Confidential Information stored in Employee's memory), or any part thereof, to any person, firm, corporation, or association or other entity not having a need to know and authority to know and use the Confidential Information in connection with the business of the Company Group for any reason whatsoever; (ii) access or use any Confidential Information, and not to copy any documents, records, files, media, or other resources containing any Confidential Information, or remove any such documents, records, files, media, or other resources from the premises or control of the Company Group, except as required in the performance of the Employee's authorized employment duties to the Company Group; or (iii) directly or indirectly use or generate benefit from such Confidential Information, without prior written permission from the Chief Executive Officer of Company. Notwithstanding the foregoing restrictions, Employee may publish, disclose, use, or make accessible Confidential Information as required in the execution of Employee's job duties and responsibilities with the Company and for the benefit of the Company Group.

        b.   Employee understands and acknowledges that Employee's obligations under this Agreement regarding any particular Confidential Information begins immediately when the Employee first has access to the Confidential Information (whether before or after the Employee begins employment with the Company Group) and shall continue during and after the Employee's employment by the Company Group until the time that the Confidential Information has become public knowledge other than as a result of the Employee's breach of this Agreement or breach by those acting in concert with the Employee or on the Employee's behalf.

        c.   Nothing in this Agreement shall be construed to prevent disclosure of Confidential Information as may be required or allowed by applicable law or regulation, or pursuant to the valid order of a court of competent jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation, or order. Employee shall promptly provide written notice of any such order to the General Counsel of the Company Group.

4.  **<u>Third-Party Information</u>**.  Employee acknowledges that, as a result of Employee's employment by the Company Group, Employee will have access to, or knowledge of, confidential business information or trade secrets of third parties, such as clients, vendors, suppliers, partners, joint venturers, and the like of the Company Group.  Employee agrees to preserve and protect the confidentiality of such third-party confidential information and trade secrets to the same extent, and on the same basis, as the Confidential Information.

5.  **<u>Use Company Issued Devices; Return of Confidential Information and Company Group Property.</u>** In connection with Employee's responsibilities, the Company may provide to Employee certain company issued devices that may include one or more of the following: laptop computer, desktop computer, mobile phone/smart phone, tablet computer, thumb drive, etc. (collectively referred to hereafter as "<u>Company Issued Devices</u>"). Employee recognizes, understands, and agrees that the Company Issued Devices are Company property and not that of Employee. Employee also understands and agrees that Employee has no expectation of privacy

3

from Company with respect to any information or data contained on Company Issued Devices. Employee shall use the Company Issued Devices to perform Company Services for and on behalf of Company. While in Employee's possession, Employee is fully responsible for the safekeeping of the Company Issued Devices, as well as personal devices used for work purposes pursuant to Company's Bring Your Own Device ("BYOD") Policy, and the information and data contained thereon, including Company's Confidential Information. Employee understands and agrees that only Company authorized programs, hardware, and software may be installed on Company Issued Devices and that all such programs, hardware, and software are Company property. Employee further understands and agrees that all data and information on the Company Issued Devices is Company property. Employee must use Company Issued Devices to perform any and all Company Services requiring such devices on Company's behalf, including all such communications with Company's clients, prospective clients, and/or referral sources. Employee shall only access the Company Group's Confidential Information on Company Issued Devices and accounts (e.g. Company e-mail and cloud accounts). Employee shall not access the Company Group's Confidential Information from any personal or non-company issued device or personal accounts (such as webmail or cloud-based storage locations). Employee may not disclose to any individual or entity outside of the Company Group any data or information contained on Company Issued Devices, except in the course of Employee's job duties and responsibilities to Company, or as otherwise provided in Section 7 and Section 9 of this Agreement. Employee must maintain a password to all Company Issued Devices in Employee's possession and must provide Company's information technology department with said password(s) within forty-eight (48) hours of creating or changing said password(s). Employee may not disclose Employee's password(s) for Company Issued Devices to any individual or entity outside of Company. Upon request of the Company or, in the event that Employee provides written notice of resignation or termination as required under Section 11 of this Agreement, within twenty-four (24) hours of such written notice (unless otherwise directed in writing), Employee shall return all Company Group written or electronic materials, data, information, records, and any other documents or property (including, without limitation, all Company Issued Devices) in Employee's possession or control, whether located on or off the Company Group's premises. Employee agrees that if Employee accesses or downloads any Confidential Information using a personal device or personal account in violation of this Agreement, Employee shall provide the Company access to such device or account within three (3) days of the Company's demand in order to ensure all Confidential Information has been removed. Employee further agrees that Employee will delete all Confidential Information from personal devices used pursuant to Company's BYOD Policy immediately upon resignation or termination, unless otherwise directed in writing. If so directed to maintain Confidential Information on a personal device, Employee must continue to treat the Confidential Information in accordance with the confidentiality provisions stated herein.

6. **No Use of Other Confidential Information or Conflicting Obligations by Employee.** Employee promises that Employee will not use as part of Employee's employment with the Company Group, disclose to the Company Group, bring on Company Group premises, or induce the Company Group or any of their employees to intentionally or unintentionally use or disclose, any confidential or proprietary information or material belonging to Employee's previous employer(s) or belonging to any other person or entity. Employee will not enter into any agreement or undertake any other duty, whether written or oral, in conflict with the provisions of this Agreement.

92144612v.2

7.  **Immunity.**  As provided by the Defend Trade Secrets Act, 28 U.S.C. §1833(b) (the "DTSA"), Employee shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made in (a) confidence to a federal, state, or local government official or to an attorney solely for the purpose of reporting or investigating a suspected violation of law, or (b) a complaint or other document filed in a lawsuit or other proceeding, provided such filing is made under seal.  In the event Employee files a lawsuit for retaliation by Company for reporting a suspected violation of law, Employee may disclose the trade secret to Employee's attorney and use the trade secret information in the court proceeding, provided Employee files any document containing the trade secret under seal and does not disclose the trade secret, except pursuant to court order.

8.  **Restrictive Covenants.**

a.  **Consideration.**  Employee's promises in this Section 8 are in exchange for the consideration provided as set forth in this Agreement, including, without limitation, the Company providing Employee with access to and the opportunity to create and/or develop Confidential Information and the Company's relationships and goodwill with existing and prospective clients and referral sources.  Employee's promises in this Section 8 are a material incentive for the Company to enter into this Agreement, and are ancillary to, and intended to reinforce, Employee's promises to protect the Company's Confidential Information and client relationships, as provided in this Agreement.

b.  **Restrictions During Employment With the Company Group.**  Employee hereby agrees that during the period of Employee's employment with any member of the Company Group, Employee shall not: (i) on Employee's own behalf or on behalf of any other person or entity, directly or indirectly, (A) solicit or counsel any Restricted Client to terminate any business relationship with Company Group or commence a similar business relationship with another individual or entity; (B) in any other manner attempt to directly or indirectly to influence, induce, or encourage any Restricted Client to discontinue, reduce, or materially change its relationship or business with the Company Group; or (C) accept any business from or perform any Company Services for a Restricted Client, other than on behalf of and for the benefit of the Company Group; (ii) on Employee's own behalf or on behalf of any other person or entity, directly or indirectly (A) hire, solicit for employment, or otherwise seek to hire any person who is at the time, or was within the immediately preceding twelve (12) months, an employee of the Company Group, or (B) in any other manner attempt to solicit, influence, induce, or encourage any current employee of the Company Group to leave the employment of the Company or to abandon, reduce or materially change his or her employment relationship with the Company Group; or (iii) on Employee's own behalf or on behalf of any other person or entity, directly or indirectly, (A) work in, service, accept referrals from, provide investment, wealth management, or brokerage services to clients referred from, or otherwise participate in any referral networks of any Referral Partner other than on behalf of and for the benefit of the Company Group; or (B) induce or attempt to induce a Referral Partner to alter or change its relationship with the Company Group.

c.  **Restrictions Following Employment With the Company Group.**

5

92144612v.2

i.   <u>Non-Solicitation of Restricted Clients</u>.  Employee hereby agrees that during the Post-Employment Restricted Period (as defined below), Employee shall not: (i) on Employee's own behalf or on behalf of any other person or entity, directly or indirectly, (A) solicit or counsel, or assist in soliciting or counseling, any Restricted Client to terminate any business relationship with Company Group or commence a similar business relationship with another individual or entity; (B) in any other manner attempt to directly or indirectly to influence, induce, or encourage any Restricted Client to discontinue, reduce, or materially change its relationship or business with the Company Group; or (C) accept any business from or perform any Company Services for a Restricted Client that are the same or substantially similar to the business accepted or Company Services performed by Employee during his/her employment with the Company Group; provided that Employee's obligations under this <u>Section (8)(c)(i)</u> are limited to those Restricted Clients with whom Employee worked, directly or indirectly (through the supervision or management of employees), or about whom Employee received or had access to Confidential Information, during the twenty-four (24) month period preceding the termination of Employee's employment. Notwithstanding the foregoing, Employee shall not be in breach of this <u>Section 8(c)(i)</u> if Employee solicits, counsels, or accepts business from any of the members of Employee's family set forth in <u>Exhibit A</u> hereto ("<u>Family Members</u>"). <u>Exhibit A</u> sets forth (1) the name of each Family Member of Employee, and (2) the exact nature of each Family Member's relationship to Employee. Employee represents and warrants that <u>Exhibit A</u> accurately describes the relationship that each Family Member has with Employee.

The non-solicitation restrictions under this <u>Section 8(c)</u> explicitly cover all forms of oral, written, or electronic communication, including, but not limited to, communications by email, regular mail, express mail, telephone, text message, fax, instant message, and social media, including, but not limited to, Facebook, LinkedIn, Instagram, Twitter, and any other social media platform.

ii.   <u>Non-Solicitation of Employees</u>. Employee understands and acknowledges that the Company has expended and continues to expend significant time and expense in recruiting and training its employees and that the loss of employees would cause significant and irreparable harm to the Company. Employee hereby agrees that during the Post-Employment Restricted Period (as defined below), Employee shall not, on Employee's own behalf or on behalf of any other person or entity, directly or indirectly (A) hire, solicit for employment, or otherwise seek to hire any person who is at the time, or was within the immediately preceding twelve (12) months, an employee of the Company Group, or (B) in any other manner attempt to solicit, influence, induce, or encourage any current employee of the Company Group to leave the employment of the Company or to abandon, reduce or materially change his or her employment relationship with the Company Group; provided that Employee's obligations under this <u>Section (8)(c)(ii)</u> are limited to those employees with whom Employee worked, directly or indirectly (through the supervision or management of employees), or about whom Employee received or had access to Confidential Information, during the twenty-four (24) month period preceding the termination of Employee's employment.

iii.   <u>Nonparticipation in Referral Source Network</u>. Employee hereby agrees that during the Post-Employment Restricted Period, Employee shall not, on Employee's own behalf or on behalf of any other person or entity, directly or indirectly, (A) work in, service, provide

6

92144612v.2

investment, wealth management, or brokerage services to clients referred from, or otherwise participate in any referral networks of any Referral Partner other than on behalf of and for the benefit of the Company Group; or (B) induce or attempt to induce a Referral Partner to alter or change its relationship with the Company Group;  provided that Employee's obligations under this Section (8)(c)(iii) are limited to those Referral Partners with whom Employee worked, directly or indirectly (through the supervision or management of employees), or about whom Employee received or had access to Confidential Information, during the twenty-four (24) month period preceding the termination of Employee's employment.

iv.    Non-Disparagement.  Employee agrees and covenants that the Employee will not at any time make, publish, or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments, or statements concerning the Company Group or its businesses, employees, officers or clients.  This Section does not, in any way, restrict or impede the Employee from exercising protected rights to the extent that such rights cannot be waived by agreement, including but not limited to the Employee's Section 7 rights under the NLRA, the protected disclosures described in Section 9, rights to communicate with the Securities and Exchange Commission ("SEC") or other administrative or regulatory agency, or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation, or order.

d.    **Definitions**.  The following definitions shall apply for purposes of this Agreement:

i.    "Post-Employment Restricted Period" shall mean the twenty-four (24) month period immediately following the termination of Employee's employment with all members of the Company Group, regardless of the reason for such termination and regardless of whether such termination was by Employee or the Company Group.

ii.    "Restricted Client" shall mean any current or prospective client of the Company Group.

iii.    "Referral Partner" shall mean all referral sources, including custodians (e.g. Charles Schwab/TD Ameritrade and Fidelity, etc.), with whom the Company Group had referral relationships or participated in referral programs.

9.  **Protected Disclosures.** Nothing in this Agreement shall prevent Employee from filing a charge or complaint or making a disclosure or report of possible unlawful activity, including a challenge to the validity of this Agreement, with any governmental agency, including but not limited to the Equal Employment Opportunity Commission ("EEOC"), the National Labor Relations Board ("NLRB"), or the SEC, or from participating in any investigation or proceeding conducted by the EEOC, NLRB, SEC, or any federal, state or local agency. This Agreement does not impose any condition precedent (such as prior disclosure to Company), any penalty, or any other restriction or limitation adversely affecting Employee's rights regarding any governmental agency disclosure, report, claim or investigation.  Employee understands and recognizes, however, that even if a report or disclosure is made or a charge is filed by Employee or on his/her behalf with a governmental agency other than the SEC, **Employee will not be entitled to any damages**

7

**or payment of any money or other relief personal to him/her relating to any event which occurred prior to his/her execution of this Agreement.**

10. **Consent to Use Name, Image, Likeness, Voice or Statements.** During the course of Employee's employment, Company may use Employee's name, image, likeness, voice and/or statements in connection with its marketing, advertising and/or promotional activities, which activities may include, but are not limited to, print advertisements, television advertisements, internet advertisements, website marketing, videos, testimonials, statements, mailers, e-mail promotions, e-mail advertisements, etc. Employee hereby consents to Company's use of Employee's name, image, likeness, voice and/or statements in connection with any and all such marketing, advertising and/or promotion materials, whether used, transmitted, broadcasted, displayed and/or distributed during Employee's employment with Company or after Employee's termination of employment with Company, regardless of the reason for the termination of Employee's employment or whether such termination is voluntary or involuntary.

11. **Notice and Transition Period**. Employee will provide Company with at least thirty (30) days advance, written notice of resignation or termination of Employee's employment, which must be provided before Employee engages in any post-termination activities, including but not limited to retirement, self-employment, working for any other person or entity other than another member of the Company Group, or allowing Employee's name to be associated with any other person or entity. This thirty (30)-day period is referred to herein as the "Transition Period." During the Transition Period, Employee will remain an employee of Company, owe Company a duty of loyalty, and will continue to work in order to transition his/her duties as directed by Company. Company may in its sole and unfettered discretion waive the Transition Period if it so chooses and will only be responsible to pay Employee's salary through Employee's last day of work. In accordance with Section 5 of this Agreement, Employee shall return all Confidential Information and Company Group Property within twenty-four (24) hours of providing the Company with written notice of Employee's resignation or termination, unless otherwise directed in writing.

12. **Injunctive Relief; Reasonableness of Restrictions.** Employee understands and agrees that the restrictions and obligations upon Employee contained in this Agreement are material to the Company Group and that this Agreement would not be entered into without these promises from Employee. Employee acknowledges that these restrictions and obligations do not terminate when Employee's employment terminates. Employee understands that the foregoing restrictions may limit Employee's ability to engage in a business similar to or competitive with the Company Group but acknowledges that Employee will receive sufficient consideration under this Agreement to justify such restrictions. Employee further acknowledges that the foregoing restrictions and obligations do not prevent Employee from earning a living with the skills and experiences Employee currently possesses. Employee acknowledges that money damages would not be a sufficient remedy for any breach of this Agreement by Employee, and, as such, the Company Group shall be entitled to enforce its rights under this Agreement by injunctive relief in addition to all remedies available at law or in equity. It is expressly understood and agreed that Company Group and Employee consider the restrictions and obligations upon Employee contained in this Agreement to constitute reasonable restraints as to time, geography, and the scope of the activities involved, and to be reasonable and necessary for the purposes of preserving and protecting the Confidential Information, client relationships, referral sources, goodwill, and other legitimate

8

business interests belonging to the Company Group.  Nevertheless, if any of the aforesaid restrictions is found by a court having jurisdiction to be unreasonable, over broad as to time, geography or scope, or otherwise unenforceable, the Parties intend for the restrictions therein set forth to be modified by such court so as to be reasonable and enforceable and, as so modified by the court, to be fully enforced.  Employee hereby expressly waives, and agrees not to assert, any challenge to any restrictive covenant in this Agreement premised upon insufficiency of consideration, over breadth or unreasonableness, or that any provisions of this Agreement are otherwise void, voidable, or unenforceable or should be voided or held unenforceable.  If Employee violates any of the restrictions contained this Agreement, the duration of the restriction shall be tolled and suspended for any period that Employee is in violation of such restriction.

13. **Works Made by Individual**.  Any written materials or works Employee has created or will create during Employee's employment with Company, which relate in any way to actual or potential business or research efforts of Company, joint ventures, its client and/or business units, shall be considered Company property.  Employee assigns Employee's right, title and interest in any such proprietary ideas based on Company property to Company.  This Agreement does not apply to works that are or have been developed entirely by Employee on Employee's own time without use of Company facilities, supplies, equipment, information or trade secrets, and that do not relate to Company or its business.

14. **Attorney's Fees and Costs.**  In the event a dispute arises between the Parties relating in any way to this Agreement and legal action is instituted, by either Party, the prevailing Party shall be entitled to recover its reasonable costs and attorneys' fees (including paralegal fees) from the non-prevailing Party. As used herein, costs and attorneys' fees (including paralegal fees) include any costs and attorneys' fees in any appellate proceeding.

15. **Construction.**  Language in all parts of this Agreement shall be construed as a whole according to its fair meaning. The Parties agree that this Agreement is the product of joint authorship, and in the event of any ambiguity, the Agreement shall not be construed against any Party.

16. **At-Will Employment**.  Employee and the Company acknowledge and agree that this Agreement is not intended and shall not be construed as a guarantee or assurance of employment with the Company Group for any specific period of time.  Nothing herein shall alter Employee's status as an at-will employee of the Company Group.

17. **Applicable Law, Venue, and Jury Waiver.**  This Agreement shall be interpreted under and governed by the laws of the State of Georgia without regard to Conflict of Laws.  The Parties agree that any dispute concerning this Agreement shall be brought only in a court of competent jurisdiction in Fulton County, Georgia. EMPLOYEE AND COMPANY HEREBY WAIVE THE RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM ARISING UNDER OR RELATING TO THIS AGREEMENT OR EMPLOYEE'S EMPLOYMENT WITH THE COMPANY OR TERMINATION OF EMPLOYMENT.

18. **Amendments or Modifications.**  No amendments or modifications to this Agreement shall be binding on any of the Parties unless such amendment or modification is in writing and executed

92144612v.2

by all of the Parties to this Agreement.  No term, provision, or clause of this Agreement shall be deemed waived and no breach excused unless such waiver or consent shall be in writing and executed by the Chief Executive Officer of Company.

19. **Successors and Assigns.**  This Agreement shall be binding upon and inure to the benefit of Company's successors and assigns, parents, subsidiaries, and affiliated companies and be enforceable by Company's successors and assigns, parents, subsidiaries and affiliated companies without the need for any additional action by Employee.  Employee agrees that the Company Group may assign this Agreement without Employee's consent.  Employee's obligations under this Agreement are personal and such obligations of Employee shall not be voluntarily or involuntarily assigned, alienated, or transferred by Employee without the prior written consent of the Company Group. Each and every reference to "Company" in this Agreement shall be construed as including Company's successors and assigns.

20. **Surviving Provisions.**  All of the provisions of this Agreement, including but not limited to the restrictions and remedies survive the termination of Employee's employment, irrespective of the grounds or reasons for such termination, including termination by Company for any reason, or no reason at all.

21. **Disclosure of Agreement.**  Employee shall, and Company may, disclose this Agreement and its terms to any future or prospective employer of Employee and to any client, vendor, or referral source, or prospective client, vendor or referral source of Company, Employee, or future employer of Employee.

22. **Severable and Independent Provisions.**  Company and Employee acknowledge that the obligations in this Agreement shall be severable and independent from any other provisions of Employee's employment relationship with Company, and the existence of any claim or cause of action that Employee may have against Company will not constitute a defense to the enforcement of this Agreement by Company.  The Parties further agree that any such court or arbitral authority is expressly authorized to modify any unenforceable provision of this Agreement instead of severing the unenforceable provision from this Agreement in its entirety, whether by rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement, or by making any other modifications it deems warranted to carry out the intent and agreement of the Parties as embodied in this Agreement to the maximum extent permitted by law.

23. **No Violation of Prior Agreements.**  Employee represents and warrants that neither the exercise of Employee's duties as an employee of Company, Employee's execution of this Agreement nor Employee's performance hereunder will constitute a violation of any existing restrictive covenants given to any former employer or other third party.

24. **Merger.** This Agreement embodies the complete agreement and understanding among the Parties and supersedes and preempts any prior understandings, agreements or representations by or among the Parties, written or oral, which may have related to the subject matter hereof in any way.  Notwithstanding the foregoing sentence, this Agreement does not replace or alter in anyway any obligations Employee owes to the Company Group under applicable laws, or owed under any

10

92144612v.2

agreements, including agreements regarding confidentiality, non-disclosure, non-disparagement, non-solicitation, non-competition, duties of loyalty or fiduciary duty. Applicable laws may include, but are not limited to, state laws protecting company trade secrets or other confidential information.

25. **Acknowledgement.**  Employee acknowledges having read this Agreement in full and completely understands all of its terms and obligations and enters into this Agreement freely and voluntarily.

**IN WITNESS THEREOF,** the parties hereto have executed this Agreement as of the date set forth above.

[*Signature Page Follows*]

11

92144612v.2

**Mercer Global Advisors Inc.**

DocuSigned by:

*Samantha Elder*

4EA6F89BBEC54E2...

(Signature)

      Samantha Elder

By: _____

      Director, Human Resources

Its: _____

      10/29/2021

Date: _____


**Employee**

 Travis Weitz

_____

(Print Name)

DocuSigned by:

*Tri Wets*

88D9B1CAD8A8424...

(Signature)

    10/29/2021

Date: _____

12

92144612v.2

**Exhibit A**

Family Members

| Name | Relationship to Employee |
|---|---|
| See names on wet signature document | |
| | |
| | |
| | |
| | |
| | |
| | |

13

92144612v.2